Filed 1/5/24  P. v. Raica CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>FLORIN RAICA,<br><br>        Defendant and Appellant. | G062003<br><br>(Super. Ct. No. 12NF3631)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Law Office of Ashkan Yekrangi and Ashkan Yekrangi for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Florin Raica filed a motion to vacate his conviction for drug charges (Pen. Code, § 1473.7) on the ground he did not meaningfully understand the adverse immigration consequences of his guilty plea.[1] The trial court denied the motion to vacate. We affirm.

FACTS AND PROCEDURAL HISTORY

In November 2012, Raica was charged in a felony complaint with possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a) [count 1]), possession of controlled substance paraphernalia (*id.*, former § 11364.1, subd. (a) [count 2]),[2] and smuggling controlled substances into a correctional facility (§ 4573 [count 3]). In March 2013, Raica entered into a plea agreement, pleading guilty to counts 1 and 2 in exchange for dismissal of count 3 and a sentence of three years of supervised probation. His plea agreement reads: "I offer the following facts as the basis for my guilty plea: [¶] In Orange County, California, on 11/2/12 I knowingly possessed a useable quantity of methamphetamine and a pipe to smoke it."

In August 2013, Raica admitted committing domestic violence, which violated the terms of his probation on the drug offenses. The trial court revoked Raica's probation and sentenced him to 16 months on count 1; the court stayed the sentence on count 2 pending successful completion of his sentence on count 1.

In April 2022, Raica filed a motion to vacate his convictions on the drug offenses. (§ 1473.7.) After a nonevidentiary hearing, the trial court denied Raica's motion to vacate. Raica timely appealed.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

[2] "Health and Safety Code section 11364.1 was repealed effective January 1, 2015, and reenacted without substantive change in Health and Safety Code section 11364. (Stats. 2014, ch. 331, § 9 [repealed]; Stats. 2011, ch. 738, § 10 [reenacted] . . . ." (*People v. Maxwell* (2020) 58 Cal.App.5th 546, 551, fn. 2.)

DISCUSSION

Section 1473.7 authorizes a motion to vacate a conviction on the ground the conviction is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) The moving party must establish by a preponderance of the evidence both lack of understanding of the immigration consequences of the conviction and prejudice. (§ 1473.7, subd. (e)(1).)

I.

STANDARD OF REVIEW

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences. [Citation.] "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.'" [Citation.] When courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on ""'the credibility of witnesses the [superior court] heard and observed.'"" [Citation.] But when the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court '"are in the same position,'" and no deference is owed. [Citation.] Because the trial court here conducted no evidentiary hearing, there is no basis for deference, and 'it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 319–320.)

## II.

### RAICA DID NOT ESTABLISH LACK OF UNDERSTANDING OF THE IMMIGRATION CONSEQUENCES OF HIS CONVICTION

Raica initialed the paragraph on the plea agreement form that stated: "Immigration consequences:  I understand if I am not a citizen of the United States, my conviction for the offense charged *will have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States*."  (Italics added.)  Raica's counsel signed the following statement, also on the plea agreement form:  "I am the attorney of record for defendant.  I have explained to defendant each of the rights set forth on this form.  I have discussed the charges and the facts with defendant.  I have studied the possible defenses to the charges and discussed those possible defenses with defendant.  I have discussed the possible sentence ranges and immigration consequences with defendant.  I also have discussed the contents of this form with defendant.  I concur with defendant's decision to waive the rights set forth on this form and to plead guilty.  No promises of a particular sentence or sentence recommendation have been made to defendant by me, or to my knowledge by the prosecuting attorney or the court, which have not been fully disclosed on this form.  I agree that this form may be received by the court as evidence of defendant's advisement and voluntary, intelligent, knowing, and express waiver of the rights set forth on this form."

Unlike the plea agreement forms at issue in cases such as *People v. Patterson* (2017) 2 Cal.5th 885 and *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*), Raica's plea agreement specified he understood his convictions *would* have the consequence of deportation, exclusion, or denial of naturalization.  As the Supreme Court held in *People v. Patterson*, "A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, and yet be unaware that a conviction for a specific charged offense will render the defendant subject

4

to mandatory removal. Thus, as we have previously noted in a different context, the standard . . . advisement that a criminal conviction 'may' have adverse immigration consequences 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such.'"[3] (*People v. Patterson, supra*, 2 Cal.5th at pp. 895–896.) Here, the clear, plain language of the plea agreement advised Raica his guilty plea would have adverse immigration consequences.

Raica raises two arguments to support his contention that his plea agreement was inadequate to advise him of the immigration consequences of his plea. First, he argues the use of the disjunctive "or" in the list of immigration consequences violated his rights because it "leads a reasonable person to believe that some of those consequences would occur, but not all." We hold the language of the plea agreement is clear and understandable to a reasonable person in Raica's position. Moreover, we note Raica did not claim in his declaration in support of his motion to vacate that he was actually confused about the specified immigration consequences. Rather, he argues he was not aware of *any* immigration consequences of his plea.

Second, Raica argues the trial court's minute order from his plea allocution hearing shows Raica was advised only that he "may" face immigration consequences and that he was not given the mandatory language required by *People v. Patterson*. The minute order reads in relevant part: "Defendant advised of the possible consequences of plea affecting deportation and citizenship." Because the reporter's transcript of that hearing is not part of the appellate record, we do not know exactly what the court said. (See *People v. Morales* (2014) 224 Cal.App.4th 1587, 1594 ["When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral

---

[3] During the trial court hearing, Raica's counsel relied on a case entitled *People v. Ruiz* in which "the Supreme Court specifically held that a warning that consequences [*sic*] may have immigration consequences are insufficient." We believe counsel intended to cite to *People v. Patterson*.

pronouncement controls"].)  Raica's declaration does not assert that anything the trial court said during his plea hearing was wrong or contradicted the advisement in his signed plea form.  Raica has not proven by a preponderance of the evidence that the trial court's oral statements were incorrect or caused him to not be clear about or not understand the immigration consequences of his guilty plea.

### III.

### RAICA DID NOT ESTABLISH PREJUDICE

In his declaration in support of the motion to vacate, Raica states:  "At the time of my convictions, I did not understand the immigration consequences.  I did not understand that I would be inadmissible, I did not understand that it would bar me from being a United States citizen, and I did not understand that it would make me live in a constant state of fear of being deported."  The declaration also states:  "I went to court and I did not want to be stuck in the legal system for a long time, so I quickly pled guilty.  I was not aware at the time of the immigration consequences this and my previous convictions could have on my legal status."

"[T]o establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence:  (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges."  (*Mejia, supra*, 36 Cal.App.5th at p. 862.)  Raica's declaration fails to set forth facts showing a reasonable probability he would not have pled guilty had he understood the immigration consequences of his plea.

"[A] superior court is required to make a finding of legal invalidity if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.'  [Citation.]"  (*Mejia, supra*, 36 Cal.App.5th at p. 871.)

6

"[T]he focus of the inquiry in a section 1473.7 motion is on the *defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' [Citation.]" (*Mejia, supra*, 36 Cal.App.5th at p. 871.) "[A] 'prejudicial error' occurs under section 1473.7 when there is a *reasonable probability* that the person would not have pleaded guilty — and would have risked going to trial (even if only to figuratively throw a '"Hail Mary"') — had the person known that the guilty plea would result in mandatory and dire immigration consequences." (*Mejia, supra*, 36 Cal.App.5th at p. 871.)

In *Mejia*, the appellate court noted "Mejia's undisputed testimony at the evidentiary hearing established that he did not 'meaningfully understand' or 'knowingly accept' the mandatory deportation consequences when he pleaded guilty." (*Mejia, supra*, 36 Cal.App.5th at p. 872.) Additionally, the record included contemporaneous evidence substantiating Mejia's claim he would not have pleaded guilty if he had been aware of the immigration consequences. (*Ibid.*)

*People v. Jung* (2020) 59 Cal.App.5th 842, in which another panel of this court authorized section 1473.7 relief, is instructive on what kind of factual record is sufficient to show prejudice. Defendant Eun Sung Jung's declaration in support of her motion to vacate her conviction stated that none of the public defenders representing her had ever asked about her immigration status; she initialed all empty spaces and signed the plea forms when they were presented to her in the holding cell next to the courtroom; she did not ask her attorney to explain the forms to her "because she assumed he knew what was best for her"; the first time she heard about immigration consequences of her conviction was that day during her sentencing, but at that point she "'felt trapped' and was 'too intimidated' to ask questions"; and "'[i]f I had been properly advised or understood the immigration consequences beforehand, I would not have accepted the plea bargain.'" (*People v. Jung, supra*, 59 Cal.App.5th at p. 851.) Jung also submitted notes on her case from the public defender's office, which did not reflect any negotiations with

the district attorney's office to drop or reduce the charges to avoid adverse immigration consequences, and the declaration of an immigration attorney who believed Jung did not have a sophisticated understanding of the immigration consequences of her guilty plea, she had not been informed of the immigration consequences before signing the plea agreement, the plea bargaining process would have been different if Jung's noncitizen status had been known, and no one analyzed the possible immigration consequences of her plea. (*Id.* at pp. 851–852.) The details in the defendant's declaration in *People v. Jung* present a stark contrast to the sparse declaration on which Raica relied here.

"[T]he 'key' to section 1473.7 is not what the defense attorney said or did not say about the immigration consequences of the plea, but is '"the mindset of the defendant and what he or she understood — or didn't understand — at the time the plea was taken."'" (*People v. Jung, supra*, 59 Cal.App.5th at p. 857.) Other than Raica's conclusory statement that he was not aware of and did not understand the immigration consequences of his guilty plea, Raica does not offer any evidence of his mindset, or any evidence he would not have pled guilty had he been aware of the immigration consequences.

Raica has not proven by a preponderance of the evidence that he did not "meaningfully understand" or "knowingly accept" the adverse immigration consequences of his plea, or that if he had understood those consequences, it is reasonably probable he would not have pled guilty but instead would have attempted to defend against the charges. Raica offers no evidence establishing the guilty plea was prejudicial at the time he entered into it.

8

DISPOSITION

The postjudgment order is affirmed.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.